857 F.2d 1170
 RICO Bus.Disp.Guide 7038
 Donald CROTTY, Donald Schak, Alan Stratton, Donna Stratton
and James Grabowski, Plaintiffs-Appellants,
v.
CITY OF CHICAGO HEIGHTS, a Municipal Corporation, Joseph
Ignelzi, John Hogensen and Jack Cripe, each individually and
as building inspectors for the City of Chicago Heights, E.J.
Doggett, individually and as City Administrator for the City
of Chicago Heights, Charles Panici, individually and as
Mayor of Chicago Heights, and J.A. Melei, individually and
as Housing Code Officer, Defendants-Appellees.
 No. 87-2742.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 12, 1988.
Decided Sept. 20, 1988.
 
 Jonathan P. Geen, Harold E. Collins, Ltd., Chicago, Ill., for plaintiffs-appellants.
 William Stewart Grotefeld, Grotefeld & Assoc., Chicago, Ill., for defendants-appellees.
 Before POSNER, COFFEY and FLAUM, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 Plaintiff property owners brought an action in federal district court alleging that defendants' condemnation of plaintiffs' rental properties as unfit for human habitation violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the federal civil rights laws. The district court ordered the federal action stayed "because of pending state court proceedings." Because the district court's order was not a final order within the meaning of 28 U.S.C. Sec. 1291, we dismiss this appeal for want of jurisdiction.
 
 I.
 
 2
 Plaintiffs owned twelve brick buildings containing 159 rental units at 520-640 W. Hickory Street in Chicago Heights, Illinois. In the late summer of 1984, defendants inspected the buildings, condemned them as "unfit for human habitation," and posted them as "uninhabitable." The city ordered the tenants to vacate and notified plaintiffs of the postings. After a hearing on the condition of the buildings, the city filed actions in the Circuit Court of Cook County in September and October of 1985 to have them demolished.[1]
 
 
 3
 In November of 1985, plaintiffs answered the state court complaints and counterclaimed. Plaintiffs essentially contended that defendants were aware at the time of the posting that the properties were in compliance with all applicable building codes. Plaintiffs charged that defendants had produced fraudulent inspection reports as part of a scheme to defraud landowners with the ultimate purpose of forcing black tenants to leave Chicago Heights. In furtherance of this scheme, the landowners charged, after the city posted the buildings[2] it failed to provide protection against, encouraged, and in some cases actually perpetrated "acts of fire, theft and vandalism," which eventually rendered the properties worthless.[3]
 
 
 4
 The property owners' counterclaim alleged that defendants had intentionally interfered with their contractual relations,[4] had engaged in selective enforcement of an unconstitutional ordinance, had conspired to defraud plaintiffs, and had deprived plaintiffs of their property without due process of law in violation of the Illinois and United States Constitutions. Plaintiffs later amended their state court counterclaim,[5] apparently after consultation with the state court judge, to include allegations that defendants deprived them of their constitutional rights under 42 U.S.C. Secs. 1981, 1982, 1983, and 1985 and a claim for attorneys' fees under 42 U.S.C. Sec. 1988. On October 31, 1986, plaintiffs filed a second amended counterclaim which added allegations of fraud and RICO violations. On June 3, 1987, the state court judge dismissed the RICO claims for want of jurisdiction, holding that RICO jurisdiction is exclusively federal.[6] The judge also dismissed the unlawful takings claims for failure to state a claim on which relief could be granted. Plaintiffs are currently appealing these dismissals in the Illinois courts.[7]
 
 
 5
 On May 14, 1986, five months after they first counterclaimed in state court, plaintiffs filed a three-count complaint in the federal district court seeking $10,500,000 in damages for the same acts and omissions of defendants relating to the Hickory Street properties. Plaintiffs alleged a violation of equal protection and due process, conspiracy to violate their civil rights under 42 U.S.C. Secs. 1981, 1983, and 1985, and RICO violations predicated on mail fraud, wire fraud, and obstruction of justice. Defendants moved the district court to stay the federal action in light of the state court proceedings, or alternatively to dismiss the complaint for failure to state a claim on which relief could be granted.
 
 
 6
 On October 8, 1986, the district court dismissed the case without prejudice, with leave to reinstate.[8] After the state court judge ruled in June of 1987 that he had no jurisdiction over the RICO claims, the plaintiffs moved to reinstate their federal case. On July 23, 1987, the court granted plaintiffs' motion to reinstate an amended complaint and ordered: "This case will not proceed but will be stayed because of pending state court proceedings." Plaintiffs moved the court to reconsider its decision to stay the proceedings. On September 25, 1987, the district court denied plaintiffs' motion to reconsider, "except that discovery is permitted to go forth on the RICO claim."
 
 
 7
 Despite the confusing procedural posture of this case, plaintiffs have made clear that their goal is to have the entire action heard in federal court as if no state counterclaim had ever been filed. Defendants would also prefer that the case proceed in federal court, and have suggested that plaintiffs simply voluntarily dismiss their state court action. Plaintiffs, apparently fearing the res judicata effect of the state court's dismissal of their unconstitutional takings claims, refuse to dismiss these counts unless the district court assures them that it will entertain the entire suit on the merits. Assuming that the district court will not give such assurance, one of two results will eventually occur. Either the Illinois Appellate Court will affirm the trial court's dismissal of the takings claims, in which case the state court judgment on the merits will preclude plaintiffs from asserting their claims in federal court; or, the Appellate Court will reverse, allowing plaintiffs to dismiss the entire state court action without prejudice to their federal claims.
 
 II.
 
 8
 In their briefs on appeal, the parties agree without discussion that the district court's order denying plaintiffs' motion to reconsider is a final order giving us jurisdiction under 28 U.S.C. Sec. 1291. They therefore proceed to make various arguments about whether the district court's order was a proper exercise of discretion under the abstention doctrines recognized by the Supreme Court. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814-16, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) (discussing the categories of abstention and setting forth another exception to the general obligation of the federal courts to exercise jurisdiction). We have an independent responsibility, however, to determine whether we have subject matter jurisdiction over this appeal. Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1286 (7th Cir. June 3, 1988). We conclude that we do not.
 
 
 9
 The federal appellate courts have jurisdiction over "appeals from all final decisions of the district courts of the United States...." 28 U.S.C. Sec. 1291. The district court's order in the present case is not "final" in the sense of "end[ing] the litigation on the merits and leav[ing] nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). The Supreme Court has held, however, that "collateral orders" which do not terminate the action are nonetheless appealable under Sec. 1291 if they meet certain requirements. Cohen v. Beneficial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed.2d 1528 (1949). First, and most important for this case, the district court's order must have conclusively determined the matter such that no further consideration is contemplated. Second, the order must resolve a collateral issue separable from the merits of the action. And third, there must be a risk of important loss if immediate review is denied. Interstate Material, 847 F.2d at 1286. See 15 C. Wright, A. Miller and E. Cooper, Federal Practice and Procedure Sec. 3911.
 
 
 10
 In Moses H. Cone Memorial Hospital v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court held that a district court's order granting a stay of federal proceedings under the Colorado River doctrine is an appealable collateral order under Sec. 1291. Colorado River allows federal courts to stay proceedings in extraordinary circumstances in deference to parallel and ongoing state actions for reasons of "wise judicial administration." 424 U.S. at 818, 96 S.Ct. at 1246. See Medema v. Medema Builders, Inc., 854 F.2d 210, 212 (7th Cir. August 2, 1988). The contractor in Moses Cone sought arbitration to recover costs for construction delay caused by the hospital. The hospital brought a declaratory judgment action in state court, alleging that the contractor had lost any right to arbitration under the construction contract. The contractor then sought an order from the district court compelling arbitration. The district court, acting pursuant to Colorado River, stayed the contractor's federal suit pending resolution of the state court suit, because both suits involved the same issue--the arbitrability of the contractor's claims. The court of appeals held that it had jurisdiction, and went on to reverse the stay order.
 
 
 11
 The Supreme Court agreed that jurisdiction was proper under Sec. 1291, because the stay effectively put the plaintiff contractor out of federal court. The stay, the Court reasoned, "meant that there would be no further litigation in the federal forum.... [and] amounts to a dismissal of the suit." 460 U.S. at 10, 103 S.Ct. at 934. In explaining the scope of its decision, the Court noted:
 
 
 12
 We do not hold that an order becomes final merely because it may have the practical effect of allowing a state court to be the first to rule on a common issue. We hold only that a stay order is final when the sole purpose and effect of the stay are precisely to surrender jurisdiction of a federal suit to a state court.
 
 
 13
 Id. at 10 n. 11, 103 S.Ct. at 934 n. 11. As this court observed in Mazanec v. North Judson-San Pierre School Corp., 750 F.2d 625, 628 (7th Cir.1984),[9] Moses Cone contemplated that abstention orders deferring to parallel state court proceedings would not leave an "essential part of the federal suit" in federal court.
 
 
 14
 Although the district court in this case did not explain in its short minute orders what specific ground it relied upon for the issuance of a stay, its reference to pending state court proceedings would seem to invoke the rationale of Colorado River. Unlike the Colorado River stays contemplated in Moses Cone, however, the district court specifically retained jurisdiction over (and contemplated that discovery would go forward on) the RICO claim--an essential part of the federal suit. Discovery would presumably focus on predicate acts of mail fraud (18 U.S.C. Sec. 1341), wire fraud (18 U.S.C. Sec. 1343), and obstruction of justice (18 U.S.C. Sec. 1503), but could also be directed to acts of fraud and conspiracy to defraud under state law.
 
 
 15
 A district court's "decision to invoke Colorado River necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case...." Moses Cone, 460 U.S. at 28, 103 S.Ct. at 943. Yet the district court here specifically contemplated further, concurrent proceedings in federal court. See Patterson v. Portch, 853 F.2d 1399, 1403 (7th Cir.1988) (order that employer give plaintiff a hearing constituted an "interim decree" and not a final order under Sec. 1291 where judge "envisaged the entry by her of a further order" at the conclusion of the hearing). Cf. Mazanec, 750 F.2d at 627 (noting the distinction between a "genuine stay" and a truly final order but holding that each is appealable under Sec. 1291 in the Pullman context). This is not a case where the court has "surrendered jurisdiction over a federal lawsuit," in deference to parallel state court proceedings. Moses Cone, 460 U.S. at 10 n. 11, 103 S.Ct. at 934 n. 11. We therefore hold that, on the unusual facts of this case, the district court's denial of plaintiffs' motion to reconsider its stay order was not a final order for the purposes of Sec. 1291.[10] The appeal is dismissed for want of jurisdiction.
 
 
 
 [1]
 The state court cases were eventually consolidated under the number 85 M6 60105 in the Sixth Municipal District of the Circuit Court of Cook County, Illinois, Judge Edwin Richardson presiding
 
 
 [2]
 A month after the postings, Chicago Heights Ordinance No. Miscellaneous 84-15 went into effect, giving the city broader discretion in the posting and demolition of buildings. Plaintiffs allege that the new ordinance is unconstitutional, and constitutes part of defendants' scheme to defraud plaintiffs
 
 
 [3]
 In June of 1986 plaintiffs stipulated to the demolition of their buildings without prejudice to their legal claims against defendants. The demolition action has therefore been dismissed, but plaintiffs' state court claims are still denominated "counterclaims."
 
 
 [4]
 Some of the plaintiffs apparently sold some of the buildings prior to the posting, and alleged that the buyers defaulted on their remaining obligations under the sales contract as a result of the postings and evictions
 
 
 [5]
 The property owners filed a forty-nine page "First Amended Counterclaim" in the state court on September 2, 1986
 
 
 [6]
 We have expressed doubt that federal courts have exclusive jurisdiction over RICO claims. County of Cook v. Midcon Corp., 773 F.2d 892, 905 n. 4 (7th Cir.1985). At least one district court in this circuit has ruled that state courts have concurrent jurisdiction over RICO. Karel v. Kroner, 635 F.Supp. 725 (N.D.Ill.1986). The Illinois Appellate Court for the First Judicial District has held, however, that RICO jurisdiction is exclusively federal. Thrall Car Mfg. Co. v. Lindquist, 145 Ill.App.3d 712, 495 N.E.2d 1132, 1136, 99 Ill.Dec. 397 (1st Dist.1986)
 
 
 [7]
 As of the date of oral argument in this case, the appeal had been docketed with the Illinois Appellate Court but no date had been set for argument
 
 
 [8]
 The district court wrote no opinions of any kind in this case. All orders were entered without analysis or explanation on minute order forms
 
 
 [9]
 Our decision today is not in conflict with Mazanec and the line of cases beginning with Drexler v. Southwest Dubois School Corp., 504 F.2d 836 (7th Cir.1974) (en banc ). These cases hold that abstention orders under Railroad Comm'n v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)--authorizing a stay where there are unresolved issues of state law which might moot the plaintiff's federal claims--are appealable under Sec. 1291. The district court gave no indication that it was abstaining under Pullman. Under the reasoning of Moses Cone, which controls our analysis of stay orders based on parallel state court proceedings, the stay order in this case is not appealable. See infra at 1174. Further, Drexler and Mazanec address the situation where a district court has compelled the parties to initiate state court proceedings. Here, the state suit was filed long before the stay order. Further, unlike Mazanec, where the stay order was entered after trial, here the stay does not result in the "enormous delay" that led the Mazanec court to find the Pullman order in that case appealable under Sec. 1291
 
 
 [10]
 The district court's stay order also may not be considered an injunction immediately appealable as an interlocutory order under 28 U.S.C. Sec. 1292(a)(1). Gulfstream Aerospace Corp. v. Mayacamas Corp., --- U.S. ----, 108 S.Ct. 1133, 1138-42, 99 L.Ed.2d 296 (1988). Plaintiffs may of course seek certification of the stay order for immediate appeal under 28 U.S.C. Sec. 1292(b)
 We are aware that when no abstention doctrine authorizes a stay, a district court could conceivably use our holding today to shield from review an erroneous refusal to exercise jurisdiction. To the extent that such a concern is warranted (and we do not believe that it is), "[i]ssuance of a writ of mandamus will be appropriate in exceptional circumstances involving stay orders." Gulfstream, 108 S.Ct. at 1143 n. 13.