Dennis L. REEDER and Jan L.
Reeder, Plaintiffs,

v.

KERMIT JOHNSON, ALPHAGRAPHICS,
INC., a Utah corporation, Alphagraphics, Inc., an Arizona corporation, Alphagraphics Franchising, Inc., an Arizona corporation, and Does I through X inclusive, Defendants.

No. 89–C–0364A.

United States District Court,
D. Utah, C.D.

Oct. 17, 1989.

Joseph R. Fox, Sandy, Utah, David J. Hodgson, Salt Lake City, Utah, for plaintiffs.

Mark O. Van Wagoner and Christopher J. Condie, J. Garry McAllister, Salt Lake City, Utah, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

ALDON J. ANDERSON, Senior District Judge.

## I. INTRODUCTION

The defendants filed a motion to dismiss the plaintiffs' complaint. Following a hearing on the matter held on July 21, 1989, the Court took the matter under advisement. After reading the parties' memoranda and reviewing the applicable law, the Court is now prepared to issue its ruling.

In their motion to dismiss and its accompanying memorandum, the defendants argue that the complaint is barred by prior judgments, that it fails to state a claim, and that two of plaintiffs' claims are time barred by the statute of limitations. For the reasons stated below, the Court holds that res judicata bars this action against the defendant Alphagraphics Franchising, Inc., an Arizona corporation. In all other respects, however, the defendants' motion to dismiss is denied.

1. For purposes of deciding this motion to dismiss, the Court accepts as true all of the plaintiffs' well-pleaded facts. *See Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). Furthermore, the Court proceeds on the premise that "all reasonable inferences must be indulged in favor of the plaintiff ... and the pleadings must be liberally construed." *Id.* (citation omitted).

2. One problem immediately apparent from the complaint is that the plaintiffs refer to Alphagraphics Franchising, Inc. and Alphagraphics, Inc., the Arizona corporation, jointly as "AG Arizona". As this is a RICO action premised on fraud, the plaintiffs must plead the acts constituting the offense(s) with particularity. *See Cayman Exploration Corp. v. United Gas Pipe*

## II. FACTUAL BACKGROUND [1]

The plaintiffs, Dennis L. Reeder and his wife Jan L. Reeder, allege civil violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1965, ("RICO") against the defendants, Kermit Johnson ("Johnson"), Alphagraphics, Inc., a Utah corporation ("Alphagraphics Utah"), Alphagraphics, Inc., an Arizona corporation ("Alphagraphics Arizona"), Alphagraphics Franchising, Inc., an Arizona corporation ("Alphagraphics Franchising"),[2] and several unnamed Does. Specifically, plaintiffs allege that the defendants acted and conspired to defraud the plaintiffs while using the United States mail and wires. *See* Verified Complaint ¶¶ 8, 9.

According to the plaintiffs' allegations, in 1980 Kermit Johnson proposed that the plaintiffs enter with him into a limited partnership for the purpose of acquiring an Alphagraphics franchise print shop in Salt Lake County, which Johnson represented that he could obtain. In July of the same year, the limited partnership was formed with Johnson as the general partner and Jan Reeder as a limited partner. Jan Reeder contributed $10,000 to the partnership and became a sixteen-percent limited partner, Johnson obligated himself for the purchase of certain equipment and became a sixty eight-percent general partner, and another partner, not a party to this lawsuit, contributed cash and received a sixteen-percent limited partnership interest. Dennis Reeder became an employee of the partnership.

*Line,* 873 F.2d 1357, 1362 (10th Cir.1989) ("we hold that Rule 9(b) requires particularity in pleading RICO mail and wire fraud"). The plaintiffs have not met this requirement. They must either demonstrate that the two parties are somehow the same or related, or, in accordance with *Cayman* plead with particularity the fraudulent acts of each party. Although the legal significance of this pleading problem will be dealt with below, it also presents a problem in presenting and understanding the facts in this case. Because the Court is not sure which of these two parties the plaintiffs are referring to when they mention "AG Arizona," the Court will use both parties in its discussion of the facts.

1430

After formation of the partnership, it entered into a franchise agreement with Alphagraphics Franchising and created Alphagraphics Store No. 16. At this time, according to the plaintiffs, Johnson failed to disclose that he was the controlling shareholder of Alphagraphics Utah; that he owned the name Alphagraphics in Utah; that his stores, unlike No. 16's, were not franchise stores and did not pay franchise fees; and that Alphagraphics Utah received either one-half or sixty two-percent (the complaint mentions both figures) of the franchise fees paid by No. 16 and other independent franchisees in Utah. Plaintiffs allege that the payments made by them to the defendants, including the initial franchise fee and monthly franchise fees, constituted fraud and that Johnson conspired with Alphagraphics Arizona and Alphagraphics Franchising to defraud the plaintiffs and obtain money from them.

In 1983 disputes arose between the plaintiffs and Johnson. Plaintiffs suggested that Johnson buy Jan Reeder's interest in the partnership, but Johnson refused and reportedly informed plaintiffs that as General Partner he could terminate their employment. Alternatively, Johnson suggested that the plaintiffs buy his interest for $90,000. Although plaintiffs believed that Johnson's interest was worth only $60,000, in fear of losing their investment they agreed to buy out Johnson for $90,000 and borrowed money to accomplish this. Plaintiffs claim that prior to purchasing Johnson's interest they sought and received assurances from Alphagraphics Arizona and Alphagraphics Franchising that Johnson would have nothing to do with their franchise. These assurances were given once again when Alphagraphics Arizona and Alphagraphics Franchising required the plaintiffs at a later time to enter into a new franchise agreement.[3]

Plaintiffs further allege that Alphagraphics Arizona, Alphagraphics Franchising, and Johnson coerced plaintiffs into buying some equipment for the store that they did not want by threatening to withhold a franchise from plaintiffs' relatives if the plaintiffs did not purchase the equipment. Plaintiffs claim that the equipment created financial hardship for them and that the equipment did not work properly and was removed eventually. Defendants again requested in 1985 that plaintiffs purchase another piece of equipment. Plaintiffs refused, and apparently the conflict between the parties continued as the plaintiffs ultimately filed suit in the Third Judicial District for Salt Lake County, State of Utah against Johnson and Alphagraphics Franchising. In response, Alphagraphics Franchising commenced arbitration proceedings in accordance with the franchise agreement between the Reeders and Alphagraphics Franchising.

The state trial judge, Judge Michael Murphy, stayed the state court action as to Alphagraphics Franchising pending arbitration of the disputes in accordance with the franchise agreement between the plaintiffs and Alphagraphics Franchising, Inc.[4] Following a hearing before the American Arbitration Association in Tucson, Arizona, the arbitration board terminated the franchise agreement between the parties and ordered the plaintiffs to pay $18,618.48 in royalties to Alphagraphics Franchising, as well as the arbitration and attorneys fees. The arbitrators also found, pursuant to a request from Judge Murphy, no showing of unconscionability of contract between the parties to the arbitration. Judge Murphy

3. The parties to the original franchise agreement were Alphagraphics, Inc., an Arizona corporation, and Alpha 16, a partnership. Franchise Agreement dated Sept. 27, 1980. Following Mr. Johnson's departure from the partnership, Alphagraphics Franchising, Inc. as franchisor and Dennis and Jan Reeder (DBA Alphagraphics) as franchisee entered into a new franchise agreement. Franchise Agreement dated Sept. 14, 1983.

4. Alphagraphics, Inc., an Arizona corporation, was also a party to this arbitration. In addition to the plaintiffs, it appears that the arbitration proceeding dealt with other members of the Reeder family and perhaps one other Alphagraphics franchise not the subject of this lawsuit. As noted by Judge Murphy in his order staying the state court action as to Alphagraphics Franchising, defendant Johnson was not, and could not be, a party to the arbitration as he was not a party to the Franchise Agreement.

later entered judgment essentially duplicating the arbitrator's award.

Following the disposition in state court, the plaintiffs filed suit in this Court. Count I of the complaint alleges a RICO claim predicated on mail and wire fraud, Count II alleges another mail fraud violation, and in Count III the plaintiffs claim that the defendants' acts constitute economic extortion and demonstrate a pattern of racketeering activity. Plaintiffs also allege in Count III that the defendants' scheme to defraud the plaintiffs continued through the arbitration hearing. They claim that in-house counsel for Alphagraphics Franchising and/or Alphagraphics Arizona is an arbitrator in Tucson (where the arbitration hearing in this case was held) and that he had a "working relationship with the members of the panel of arbitrators" that heard this case. Apparently, although the complaint is not specific, plaintiffs feel this relationship somehow prejudiced them.

## III. ANALYSIS

As noted above, defendants move to dismiss plaintiffs' complaint on three grounds. First, defendants claim that, in light of the state court judgment, res judicata bars the action in this Court against Alphagraphics

Franchising,[5] and that defendants Johnson, Alphagraphics Utah, and Alphagraphics Arizona are collaterally estopped by the state court action from asserting their federal claims.[6] Second, defendants argue that the plaintiffs have failed to state a valid RICO claim. Finally, defendants seek a determination from this Court that Counts II and III of the complaint are barred by the statute of limitations. The Court will address each of these contentions in turn.

### A. Res Judicata or Claim Preclusion

■ The preclusive effect of a state court judgment in a subsequent federal lawsuit is governed by the full faith and credit statute, 28 U.S.C. § 1738, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." *See Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985) (quoting 28 U.S.C. § 1738). A federal court asked to determine whether a claim before it is precluded by a previous state court decision must look first to preclusion principles of the state wherein the rendering state court resides, in this case Utah.[7]

---

**5.** The defendants do not allege that res judicata is applicable to Alphagraphics Arizona. As the discussion below will show, res judicata could not apply to Alphagraphics Arizona as it was not a party to the state court action.

**6.** Originally, in their memorandum in support of their motion to dismiss, the defendants spoke only of res judicata, not collateral estoppel. In their reply memorandum, however, they do mention collateral estoppel. The Court will discuss both res judicata and collateral estoppel because, under Utah law, which, as will be shown later, is applicable here, collateral estoppel is a "branch" of the general doctrine of res judicata. *See Robertson v. Campbell*, 674 P.2d 1226, 1230 (Utah 1983).

**7.** A literal reading of *Marrese* and other Supreme Court cases, *see Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 481–482, 102 S.Ct. 1883, 1897–1898, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980), directs the Court to apply "the preclusion law of the State in which judgment was rendered." *Marrese*, 470 U.S. at 380,

105 S.Ct. at 1332. As the rendering court in this instance is a Utah court, this Court must apply Utah preclusion law.

Notwithstanding the literal language of these Supreme Court cases, this case presents an anomalous situation. The franchise agreement between Alphagraphics Franchising and the plaintiffs contains a choice of law provision that provides for Arizona law to apply to any dispute arising under the franchise agreement. Presumably then, Judge Murphy in Utah state court could apply Arizona law. Because Arizona law might govern the substantive rights of the parties, an argument could be made that this Court must also apply Arizona preclusion law on the issue of the res judicata effect of the state judgment in this Court. One commentator writing in this area advocates this result.

> Contrary to conventional formulation, the full faith and credit statute does not require application of the domestic preclusion law of the rendering state. Rather, it requires application of the preclusion law that the courts of the rendering state would apply.

Burbank, *Interjurisdictional Preclusion, Full Faith and Credit and Federal Common Law: A*

*Id.* at 380–83, 105 S.Ct. at 1331–33; *accord Gates Learjet Corp. v. Duncan Aviation,* 851 F.2d 303 (10th Cir.1988); *Vance v. Utah,* 744 F.2d 750 (10th Cir.1984) (applying Utah law); *Braselton v. Clearfield State Bank,* 606 F.2d 285 (10th Cir.1979). If state law indicates that litigation of a particular claim is barred, then the federal court must determine next whether § 1738 is applicable to the federal statute that the plaintiffs are relying on, or decide if Congress created an exception to § 1738. *Marrese,* 470 U.S. at 383, 105 S.Ct. at 1333. In other words, assuming the present RICO action is barred under Utah law, the Court must then decide whether Congress intended that § 1738 not apply to RICO claims. *Id.*

Under Utah law, one "branch" of res judicata, referred to as "claim preclusion," "bars the relitigation by the parties or their privies of a claim for relief that was once litigated on the merits and resulted in a final judgment between the same parties or their privies." *Penrod v. Nu Creation Creme, Inc.,* 669 P.2d 873, 875 (Utah 1983) (citation omitted). Claim preclusion also prevents relitigation of claims that should and could have been brought in the prior litigation but were not. *Id.*

In this case, it is clear that the arbitrators did not hear, nor did their award concern, a RICO claim. However, whether the plaintiffs should and could have raised the RICO claim remains unanswered.

The presence of the arbitration proceeding in this case does not preclude the parties from raising a RICO claim before that forum. In a recent case the United States Supreme Court ruled that they could find no basis for concluding that Congress intended to prevent enforcement of agreements to arbitrate RICO claims. *Shear-*

son/American Express v. McMahon, 482 U.S. 220, 242, 107 S.Ct. 2332, 2345, 96 L.Ed.2d 185 (1987). However, *McMahon* does not provide the complete answer. The Full Faith and Credit Statute only applies to state "Acts, records and judicial proceedings." 28 U.S.C. § 1738. Because the statute does not cover arbitration proceedings, the focus is instead on the state court's jurisdiction.

An important issue that the parties did not raise is whether Utah state courts have jurisdiction to hear RICO claims. If state courts have no jurisdiction over RICO claims then res judicata should not bar the action in this court. This is so because state preclusion law generally holds that if the rendering court lacked subject matter jurisdiction, res judicata will not bar a subsequent suit on the same claim. *See Marrese,* 470 U.S. at 382, 105 S.Ct. at 1333 ("If state preclusion law includes this requirement of prior jurisdictional competency, which is generally true, a state judgment will *not* have claim preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts."); Restatement (Second) of Judgments § 26(1)(c) (1982) (claim preclusion generally does not apply where "[t]he plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy ... because of the limitations of the subject matter jurisdiction of the courts....").

Utah follows this general law. In *Penrod v. Nu Creation Creme, Inc.,* the plaintiffs originally filed in federal court. Federal jurisdiction was premised on the Federal Trade Commission Act, but the plaintiffs also raised several pendent state claims. The court dismissed the FTC claim, and because this eliminated the court's jurisdiction, and because diversity

---

*General Approach,* 71 Cornell L.Rev. 733, 800 (1986).

Despite the logic of Professor Burbank's point, the Court is bound by precedent to apply Utah law. This decision does not prejudice the parties in any way, however, as Arizona's claim preclusion law appears similar to Utah's in all significant respects. *See Red Bluff Mines v. Industrial Comm'n,* 144 Ariz. 199, 696 P.2d 1348, 1352 (Ct.App.1984) (Arizona claim preclusion law also prohibits relitigation of matters that

were actually litigated or that could have been litigated); *Silver v. Rose,* 135 Ariz. 339, 661 P.2d 189, 193 (Ct.App.1982) (Even in the absence of a timely appeal, a void order or judgment by a court lacking jurisdiction may be attacked at any time); *Weller v. Weller,* 14 Ariz.App. 42, 480 P.2d 379, 383 (1971) (the rendering court must be a court of *competent jurisdiction* ). Even more important, the parties are not prejudiced because they did not raise or brief this issue.

was not present, the pendent state claims were also dismissed for lack of jurisdiction. The plaintiffs then filed an action in Utah state court on the state law claims. Defendants argued before the trial judge and on appeal that the federal court's determination barred one of the claims from being raised again in state court. The Utah Supreme Court disagreed with this argument noting that the federal court had no subject matter jurisdiction over the claim the defendants sought to preclude. *Penrod,* 669 P.2d at 877. "Since the merits of the instant claim were not adjudicated, and could not have been adjudicated, in the federal court action, the doctrine of claim preclusion under res judicata does not bar assertion of the [present] claim ... in the state court." *Id.*

■ Whether Utah state courts have jurisdiction concurrent with federal courts over RICO claims is a question of first impression for this Court. Neither the Tenth Circuit nor the United States Supreme Court have ruled on this issue, although the Supreme Court has granted certiorari on this point to resolve a conflict among the circuits. *See Tafflin v. Levitt,* 865 F.2d 595 (4th Cir.) (concurrent jurisdiction over civil RICO claims), *cert. granted,* — U.S. ——, 109 S.Ct. 2428, 104 L.Ed.2d 985 (1989).[8]

The federal Circuit Courts of Appeal currently are split on this question. The Third, Fourth, and Ninth Circuits have held that there is concurrent jurisdiction, *see McCarter v. Mitcham,* 883 F.2d 196 (3rd Cir.1989); *Brandenburg v. Seidel,* 859 F.2d 1179, 1195 (4th Cir.1988); *Lou v. Belzberg,* 834 F.2d 730 (9th Cir.1987), *cert. denied,* 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988), and the Fifth and Seventh Circuits have expressed doubt that jurisdiction over civil RICO claims is exclusively federal. *See Crotty v. City of Chicago Heights,*

857 F.2d 1170, 1172 n. 6 (7th Cir.1988) *citing County of Cook v. Midcon Corp.,* 773 F.2d 892, 905 n. 4 (7th Cir.1985); *DuBroff v. DuBroff,* 833 F.2d 557, 562 (5th Cir.1987). By contrast, the Sixth Circuit is the only circuit to have held that jurisdiction over civil RICO claims is exclusively within the jurisdiction of federal courts. *See Chivas Products Ltd. v. Owen,* 864 F.2d 1280, 1286 (6th Cir.1988).[9]

This Court agrees with those courts that have held that jurisdiction over civil RICO claims is shared concurrently with state tribunals. In light of the many cases that have dealt with this issue, and the fact that the Supreme Court has granted certiorari on this point, it is unnecessary for the Court to again list here the numerous reasons for this position. However, two points are worth mentioning.

First, the Court agrees with the analysis employed by the Fourth and Ninth Circuits. The Court is persuaded, as were those courts, that the presumption that state courts assume jurisdiction over cases arising under federal law is not rebutted by RICO, its legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests. *See Brandenburg v. Seidel,* 859 F.2d 1179, 1193–95 (4th Cir.1988); *Lou v. Belzberg,* 834 F.2d 730, 735–39 (9th Cir.1987) (both citing *Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 477–78, 101 S.Ct. 2870, 2874–75, 69 L.Ed.2d 784 (1981)).

Second, in the context of res judicata, where presumably at least two different tribunals deal with the same transaction, judicial economy and efficiency are better served by a conclusion that jurisdiction over RICO is concurrently held by both federal and state courts. Concurrent jurisdiction allows the parties and the courts to deal with all causes of action in one proceeding, protects defendants from drawn

---

8. — U.S. ——, 109 S.Ct. 2428, 104 L.Ed.2d 985 (1989) states the question that the Supreme Court agreed to hear as follows: "Question presented: Did court of appeals err in holding that federal courts do not have exclusive jurisdiction over civil actions brought under RICO act, and that state courts have concurrent jurisdiction over such actions?"

9. Although the Tenth Circuit has not ruled on this issue, two other districts within the jurisdiction of the Tenth Circuit have held that jurisdiction is concurrent. *See Spence v. Flynt,* 647 F.Supp. 1266 (D.Wyo.1986); *Massey v. City of Oklahoma City,* 643 F.Supp. 81 (W.D.Okla.1986).

out litigation, and reinforces the broad remedial purpose of RICO, *see Sedima, S.P. R.L. v. Imrex Co.*, 473 U.S. 479, 497–98, 105 S.Ct. 3275, 3285–86, 87 L.Ed.2d 346 (1985) (noting that the latter purpose was expressed by Congress in enacting RICO, and that a broad reading is warranted by RICO's expansive language). Also, concurrent jurisdiction furthers the purposes of res judicata, which are to encourage reliance on judicial decisions, to bar vexatious litigation, and to free courts to deal with other disputes. *Brown v. Felsen*, 442 U.S. 127, 131, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979).

Because the plaintiffs *could* have brought the RICO action in state court, and because the plaintiffs have not alleged any compelling reason explaining why they did not bring the action there, the Court holds that the plaintiffs *should* have brought the RICO action in state court. Consequently, res judicata bars the present action in this Court against Alphagraphics Franchising. *See* Restatement (Second) of Judgments § 24 (1982).

■ In view of the fact that the plaintiffs' RICO action against Alphagraphics Franchising is barred, the next issue the Court must decide is whether RICO explicitly or implicitly creates an exception to 28 U.S.C. § 1738. *See Marrese*, 470 U.S. at 383, 105 S.Ct. at 1333. Once again, neither the Supreme Court or the Tenth Circuit has dealt directly with this issue. The Seventh Circuit, however, has ruled that "there is no reason to imply an exception under RICO to the full faith and credit statute." *County of Cook v. Midcon Corp.*, 773 F.2d 892, 908–09 (7th Cir.1985). The Court agrees with the analysis and the reasoning of *Midcon* on this point, and holds that RICO does not create an exception to § 1738. Nothing in RICO's text or legislative history suggests that Congress intended § 1738 not apply to RICO. *Id.* at 904–07. Furthermore, as the *Midcon* court noted, application of § 1738 in the RICO setting "does not appear to undermine the federal policies served by RICO." *Id.* at 907.

Because Utah law directs the Court to give res judicata effect to the state court decision in favor of Alphagraphics Franchising, and because the Court is of the opinion that RICO does not create an exception to 28 U.S.C. § 1738, Alphagraphics Franchising is dismissed with prejudice from this action.

## B. *Collateral Estoppel or Issue Preclusion*

■ The analysis for collateral estoppel is essentially the same as that utilized above for res judicata. The Supreme Court in *Marrese* interpreted an earlier case, *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), as indicating that "§ 1738 requires a federal court to look first to state preclusion law in determining the preclusive effect of a state court judgment." *Marrese*, 470 U.S. at 381, 105 S.Ct. at 1332. Absent an exception to § 1738, state preclusive law governs. *Id.*

In Utah, collateral estoppel or issue preclusion precludes relitigation of issues that were tried in an earlier action if four elements are met.

> First, the issue in both cases must be identical. Second, the judgment must be final with respect to that issue. Third, the issue must have been fully, fairly, and completely litigated in the first action. Fourth, the party who is precluded from litigating the issue must be either a party to the first action or a privy of a party.

*Madsen v. Borthick*, 769 P.2d 245, 250 (Utah 1988).

Analysis of *Madsen*'s third element precludes this Court from granting the defendants' motion. In the present case, the defendants have not adequately informed the Court as to the specific issues that the arbitration board and Judge Murphy decided, or compared those issues with the issues before this Court. Instead, the defendants simply refer the Court to the arbitration hearing transcript. *See* Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss at 7. As it is not this Court's duty to flesh out the

defendants' claims, the defendants' motion to dismiss because of collateral estoppel is denied at this time. The defendants may renew their motion if they can satisfy their burden of proof as to the elements of issue preclusion noted above.

## C. *Failure to State a RICO Claim*

The defendants charge that plaintiffs have failed to allege a civil RICO claim. Specifically, they claim that plaintiffs have not alleged a pattern of racketeering activity, that plaintiffs have not alleged damages resulting from any racketeering activity, and that Count III of the complaint fails to allege conduct constituting a RICO violation.

■ To state a valid RICO claim, the plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). The defendants first allege that the plaintiffs have not sufficiently pleaded facts demonstrating a pattern of racketeering activity.

"Pattern" as used in RICO is a flexible, case-specific term, one that courts have continually struggled with to arrive at a workable definition. The definition of "pattern of racketeering activity" contained in the RICO statute states that a pattern requires at least two acts of racketeering activity. 18 U.S.C. § 1961(5). The Supreme Court has stated that this section does not mean that two acts are always sufficient, but instead suggests that two acts are necessary; in other words, two acts constitute the threshold requirement. *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. Interpreting the legislative history of RICO in *Sedima*, the Supreme Court wrote that sporadic activity does not constitute a pattern. Instead, a plaintiff relying on RICO must demonstrate *continuity plus relationship* which combine to produce a pattern of racketeering activity. *Id.*

The Tenth Circuit, interpreting the continuity requirement articulated in *Sedima*, noted that, to make an adequate showing of continuity, "a plaintiff must demonstrate some facts from which at least a threat of ongoing illegal conduct may be inferred." *Torwest DBC, Inc. v. Dick*, 810 F.2d 925, 928 (10th Cir.1987). Going on, the court held that "a scheme to achieve a single discrete objective does not in and of itself create a threat of ongoing activity, even when that goal is pursued by multiple illegal acts, because the scheme ends when the purpose is accomplished." *Id.* at 928–29.

In the present action, the defendants argue that the plaintiffs have not met the continuity requirement, but have only alleged a single scheme based on multiple acts. *See* Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss at 11. The Court rejects this argument and holds that the plaintiffs have sufficiently alleged continuity, relationship, and hence a pattern of racketeering activity.

Plaintiffs have alleged acts that demonstrate ongoing activity on the part of the defendants. In addition to the multiple acts the plaintiffs allege were committed against them over several years, the plaintiffs allege that the defendants' fraudulent acts and nondisclosures continue as to other franchisees in Utah. This alone, if proven true, would satisfy the continuity requirement.

Furthermore, the Supreme Court in a recent case has interpreted the *Sedima* language broadly. "What a plaintiff or prosecutor must prove is continuity of racketeering activity, or its threat, *simpliciter*. This may be done in a variety of ways, thus making it difficult to formulate in the abstract any general test for continuity." *H.J. Inc. v. Northwestern Bell Telephone Co.*, — U.S. —, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989); *see also Phelps v. Wichita Eagle–Beacon*, 886 F.2d 1262, 1273 (10th Cir.1989) (recognizing that *H.J. Inc.* held that a RICO violation does not require more than one scheme). Concerning continuity, the Court also wrote that a party can "demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.* 109 S.Ct. at

2902. " 'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.*

Against this background, the facts alleged by the plaintiffs clearly state a claim under RICO. At the very least, the plaintiffs have alleged a closed-ended pattern. They claim that they made payments to the defendants over a period of several years which were illegally required by the defendants. In addition, they argue that the franchise agreements themselves are illegal. For purposes of this motion, the plaintiffs have met their burden of pleading.

■ Next, the defendants argue that the plaintiffs have not pleaded requisite damages resulting from the alleged racketeering activity. The Court holds that plaintiffs have pleaded sufficient damages. Basically, plaintiffs claim that the defendants, through their agreements with the plaintiffs and among themselves, forced the plaintiffs to pay more money than they otherwise would have been required to pay had Johnson not received a portion of the fees paid directly to Alphagraphics. Although discovery and trial may show these agreements and payments to be legal, and not in violation of any fiduciary duty owed the plaintiffs, the possibility that they may not be legal satisfies the damages requirement for RICO. *See Sedima,* 473 U.S. at 496–97, 105 S.Ct. at 3285.

The defendants' last 12(b)(6) claim is that Count III of the complaint does not state a cause of action. As noted previously, Count III alleges that the acts of the defendants requiring the plaintiffs to purchase certain equipment that allegedly did not work and that caused the plaintiffs financial hardship may constitute economic extortion in violation of 18 U.S.C. §§ 1951 and 1341. Defendants claim the franchise agreement obligated the plaintiffs as franchisee to purchase certain equipment approved by the franchisor, and that the plaintiffs were not harmed as the defendants did not receive any money from

plaintiffs by reason of the installation of this equipment. In their complaint, however, the plaintiffs allege that the defendants received reimbursement from KIS Fast Photo Lab for the defects in that company's machines. Plaintiffs claim that this reimbursement was passed on to some Alphagraphics franchisees but they received no reimbursement. This situation, if proven true, rebuts the inadequacies raised by the defendants. The defendants' motion to dismiss Count III is therefore denied.

## D. *Statute of Limitations for RICO*

Finally, defendants move to dismiss Counts I and II of the complaint because they are barred by the applicable statute of limitations. The defendants argue that, because RICO contains no statute of limitations, this Court should apply the most analogous state law. They ask the Court to apply Utah's statute of limitations for fraud, which is three years. Plaintiffs, by contrast, argue that RICO's definition of pattern, which requires two acts of racketeering activity within a ten-year period, suggests a ten-year statute of limitations. Neither of these arguments are correct, however. In a case neither party cited, *Agency Holding Corp. v. Malley–Duff & Assoc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Supreme Court unequivocally held that the statute of limitations period for all civil RICO actions is four years. This case and its four-year period apply here.

In their complaint, which was filed in this Court on April 14, 1989, the plaintiffs claim that they continued to pay franchise fees to the Alphagraphics companies until April, 1987. Verified Complaint ¶ 34. They claim that a portion of these payments were then illegally paid to Johnson. Furthermore, plaintiffs claim that they did not discover the defendants' illegal activities until after the state court action was filed in 1987. *See* Memorandum in Opposition of Defendants' Motion to Dismiss at 6. As some of the alleged acts continued until at least 1987, the Court holds at this time that the

complaint was filed within the four-year period prescribed by *Malley–Duff*.

Deciding that this action was filed timely does not dispose of the entire statute of limitations issue, however. In *Malley–Duff*, the Supreme Court refused to decide when a civil RICO cause of action accrues, *Malley–Duff*, 483 U.S. at 157, 107 S.Ct. at 2767, and the Tenth Circuit has not yet had occasion to decide the issue. Because accrual may affect what RICO injuries the plaintiffs can recover, this Court is compelled to decide the question of accrual at this time.

The proper starting place is with the purpose behind limitation periods. The Supreme Court has noted that statutory limitation periods are

> designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.

*American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974) *quoting Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944). The harshness of this policy is often tempered with tolling exceptions that, in the proper case, allow the plaintiff relief despite the plaintiff's failure to file within the proper period. Nonetheless, this Court is persuaded that a definite, functional accrual period is desireable, especially where RICO is concerned, because of the severe penalties to which a liable defendant is exposed, monetarily, reputationally, and otherwise.

As is typical with the common law when an issue as important as this one is left undecided by the Supreme Court, several different methods of accrual have developed at the circuit and district court levels. The first is known as the last predicate act rule. This approach, which focuses on the pattern element of a civil RICO claim, starts the limitations period running on the date of the last predicate act if the pattern is complete, or if the pattern is ongoing, the period begins to run when the most recent predicate act alleged occurs. The Third Circuit, which has adopted this approach, explains the theory as follows.

> The rule which we announce provides that the limitations period for a civil RICO claim runs from the date the plaintiff knew or should have known that the elements of the civil RICO cause of action existed unless, as a part of the same pattern of racketeering activity, there is further injury to the plaintiff or further predicate acts occur, in which case the accrual period shall run from the time when the plaintiff knew or should have known of the last injury or the last predicate act which is part of the same pattern of racketeering activity. The last predicate act need not have resulted in injury to the plaintiff but must be part of the same pattern. If the complaint was filed within four years of the last injury or the last predicate act, the plaintiff may recover for injuries caused by other predicate acts which occurred outside an earlier limitations period but which are part of the same "pattern."

*Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1130–31 (3rd Cir.1988). This rule is the most expansive accrual rule to date, and it is more liberal than the other rules because of the possibility that the plaintiff could recover for injuries that may have occurred many years before the last predicate act.[10]

---

**10.** The district court in *Houghton* applied a different rule than the Circuit court eventually adopted. The district court applied the last injury discovery rule which "holds that the limitations period runs from the date that the plaintiff knew or should have known of the last injury to the plaintiff caused by a predicate act." *Hough-* ton, 863 F.2d at 1129. The Third Circuit rejected the rule applied by the district court in favor of the last predicate act rule because the last injury discovery rule applies only to the injury requirement of RICO and does not take into account the pattern requirement. *Id.*

Another accrual rule that courts have utilized is the Clayton Act accrual rule. In *Malley–Duff*, the Supreme Court analogized RICO to the Clayton Act and borrowed the Clayton Act's limitations period. *Malley–Duff*, 483 U.S. at 156, 107 S.Ct. at 2767. A few courts have held that by adopting the limitations period from the Clayton Act, the Supreme Court must have intended that the Clayton Act's accrual rule apply also. *See, e.g., Gilbert Family Partnership v. Nido Corp.*, 679 F.Supp. 679 (E.D.Mich.1988); *see also Armbrister v. Roland Int'l Corp.*, 667 F.Supp. 802 (M.D. Fla.1987) (not deciding whether a different accrual rule should apply, but simply applying the Clayton Act accrual rule). An antitrust cause of action accrues and the statute of limitations begins to run when a defendant commits an act that injures a plaintiff's business. *Zenith Radio Corp. v. Hazeltine Research*, 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). Put another way, the cause of action accrues on the date the defendant commits an overt anticompetitive act that injures the plaintiff's business. *See Curtis v. Campbell–Taggart, Inc.*, 687 F.2d 336, 337 (10th Cir.), *cert. denied*, 459 U.S. 1090, 103 S.Ct. 576, 74 L.Ed.2d 937 (1982). Thus, the triggering event for accrual purposes under this method is the defendant's illegal act, not discovery by the plaintiff. *See Harold Friedman, Inc. v. Thorofare Markets*, 587 F.2d 127, 138 n. 41 (3rd Cir.1978) (when the plaintiff attained knowledge of the violation is irrelevant; "in the absence of fraudulent concealment by the defendants ... the statute is not tolled by plaintiff's failure to discover the existence of the cause of action."); *see also King & King Enterprises v. Champlin Petroleum Co.*, 657 F.2d 1147, 1150–51 (10th Cir.1981) (similar rule stated), *cert. denied*, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982).

Finally, some courts have applied the simple discovery rule. This method holds that the limitations period begins to run when a plaintiff knows or should know of the injury which is the basis for the plaintiff's cause of action. *See, e.g., Pocahontas Supreme Coal Co. v. Bethlehem Steel*, 828 F.2d 211, 220 (4th Cir.1987) (in civil RICO cases, the statute of limitations begins to run when a plaintiff knows or should know of the injury); *Bowling v. Founders Title Co.*, 773 F.2d 1175, 1178 (11th Cir.1985) (same), *cert. denied*, 475 U.S. 1109, 106 S.Ct. 1516, 89 L.Ed.2d 915 (1986); *Compton v. Ide*, 732 F.2d 1429, 1433 (9th Cir.1984) (same); *Alexander v. Perkin Elmer Corp.*, 729 F.2d 576 (8th Cir.1984) (same); *see also* Note, *All the Myriad Ways: Accrual of Civil RICO Claims in the Wake of Agency Holding Corp. v. Malley–Duff*, 48 La.L.Rev. 1411, 1414–15 (1988). Under this rule, "[t]he plaintiff can recover all of his damages if he files within four years of discovery, but nothing if he waits longer." *All the Myriad Ways, supra* at 1414.

■ The Second Circuit, in *Banker's Trust Co. v. Rhoades*, 859 F.2d 1096 (2nd Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989), adopted a variation of the simple discovery, what it called a "rule of separate accrual." *Id.* at 1105.

> Under this rule, each time plaintiff discovers or should have discovered an injury caused by defendant's violation of § 1962, a new cause of action arises as to that injury, regardless of when the actual violation occurred. A plaintiff, under *Malley–Duff*, must then bring his action within four years of this accrual to recover damages for the specific injury. Naturally, as with all rules of accrual, the standard tolling exceptions apply.

*Id.* (citations omitted). Of all the rules discussed herein, this one appears soundest, and this Court adopts the separate accrual rule promulgated by the Second Circuit.

The rule of separate accrual depends not on the defendant's acts, or upon the last predicate act, but upon discovery of RICO injury by the plaintiff. Reliance on discovery of injury to the plaintiff is consistent with the language of RICO itself. Section 1964 of RICO, which creates a private civil cause of action for violation of RICO's provisions, requires as a pre-requisite to suit that the plaintiff be "injured in his business or property." 18 U.S.C. § 1964(c); *see also Banker's Trust*, 859 F.2d at 1103

("congress tied the right to sue for damages under § 1964(c), not to the time of the defendant's RICO violation, but to the time when plaintiff suffers injury to 'his business or property' from the violation.").

■ Although the rule of separate accrual will bar a plaintiff from recovering injuries that would not be barred under one of the other rules (especially the last predicate act rule), plaintiffs injured by RICO type violation are not left without a remedy. One of the elements of a RICO claim, racketeering injury, is premised on the existence of certain predicate acts. 18 U.S.C. § 1961(1). A plaintiff injured by one of these acts would almost certainly have civil and/or criminal avenues of relief that the plaintiff could pursue, even if the existence of a pattern is not established until after the limitations period that the Court adopts today has run.

Finally, and perhaps most important, the rule of separate accrual is consistent with the purposes of statutory limitation periods. The rule is definite and will work to prevent litigation over matters long forgotten and involving evidence that the party's may have destroyed in the ordinary course of their affairs. Furthermore, the Court believes that the rule has merit because it will prevent resurrection of claims that a plaintiff should have brought long ago.

Application of this rule to the case at hand is premature at this stage. Because the time of accrual hinges on when the plaintiffs knew or should have known of the injury to them, the issue may be one of fact to be decided either by the judge on a summary judgment motion or before a jury at trial. Therefore, the Court denies the defendants' motion to dismiss the plaintiffs' claims on statute of limitations grounds as premature. This ruling, however, does not preclude the defendants' from proceeding with discovery on this issue nor from filing a motion, if appropriate, at the proper time.

IT IS SO ORDERED.